350 Ga. 785
FINAL COPY

S19A0351.  HANEY v. THE STATE.
S19A0352. JACKSON v. THE STATE.

BETHEL, Justice.

Gregory Haney and Ledarius Jackson appeal from the denial

of their motions for new trial after a jury found them guilty of malice

murder, felony murder, and armed robbery in connection with the

death of Gregory Smith.[1] In Case No. S19A0351, Haney argues that

---

[1] Haney and Jackson were indicted jointly by a Fayette County
grand jury on August 20, 2015, for malice murder, felony murder
predicated on armed robbery, and armed robbery. After a joint trial held
in May 2016, a jury found both Haney and Jackson guilty on all counts.
Haney and Jackson each received consecutive sentences of life
imprisonment without parole for malice murder and life imprisonment
for armed robbery, and the felony murder counts were vacated by
operation of law as to both Haney and Jackson. Jackson filed a motion
for new trial on June 1, 2016, and through appellate counsel amended
the motion twice, on July 20 and July 24, 2017. Haney filed a motion for
new trial on June 8, 2016, and through appellate counsel amended the
motion on July 28, 2017. The trial court held a joint hearing on the
amended motions for new trial on August 1, 2017, and it denied the
motions on April 17, 2018, in separate orders. Haney and Jackson both
filed timely notices of appeal. These cases were docketed to the Court's
term beginning in December 2018 and submitted for decisions on the
briefs.

the evidence presented against him at trial was insufficient for the jury to find him guilty beyond a reasonable doubt as to each of the charged offenses and that his defense counsel was ineffective for failing to object to certain opinion and identification testimony offered by two of the State's witnesses. In Case No. S19A0352, Jackson challenges the sufficiency of the evidence presented against him by the State as to each count of the indictment. Additionally, he argues that his defense counsel was ineffective for failing to raise an objection, pursuant to *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968), to certain statements made by State witnesses who recounted statements made by Haney implicating Jackson in the crime and for failing to object to the introduction of an audio tape of a conversation between Jackson and his girlfriend. Finding no merit in any of these enumerations, we affirm the convictions of both Haney and Jackson.

1. Construed in the light most favorable to the verdicts, the evidence presented at trial showed that Gregory Smith worked as a manager at a restaurant in Fayetteville. Smith was dating Katasha

Wilson, and the two had an infant daughter. On the night of June 6, 2015, Smith, who was working an evening shift, called Wilson around 9:00 p.m. from the restaurant to let Wilson know he would be working late. Wilson woke up around 5:00 a.m. on June 7, and she saw that Smith had not returned to their home. Wilson called Smith's cell phone, but he did not answer. Wilson then drove to the restaurant with their daughter, and, as she pulled into the parking lot, she saw that Smith's car lights were on. Wilson saw a bullet hole through Smith's car window, and she went up to the car, opened the driver's side door, and saw that Smith was dead and "slumped to the side." Wilson called 911. Police responded to the scene, and after talking with Wilson, officers discovered that Smith's car key fob, iPhone, iPad, and military knife were missing.

The officers who examined the scene discovered one spent shell casing underneath Smith's car and a second spent shell casing about ten feet away from the car. One projectile was found inside Smith's vehicle lodged in the area under the driver's seat. A second projectile passed through Smith's torso and was recovered from his right arm

during his autopsy. There was a bullet hole in the glass of the window on the driver's side of Smith's car, and there were bullet holes in both the driver's seat and the pocket of Smith's pants.[2] The projectiles and shell casings recovered from the scene and from Smith's body during the autopsy were nine-millimeter Blazer-brand ammunition, and the crime scene investigator testified that the shell casings recovered from the scene were consistent with having been fired from a nine-millimeter Jimenez handgun.

The State obtained surveillance videos from the restaurant and from a different business in an adjacent building. The restaurant surveillance video showed that Smith left the front door of the restaurant at 2:51 a.m. and moved toward the location in the parking lot where his car was later found. That video also showed a different vehicle, a Chevrolet sedan, pass behind the restaurant with its headlights off at approximately 2:56 a.m. Video from the

---

[2] The crime scene investigator testified that Smith was not struck by the bullet that caused the damage to his pants and the seat.

adjacent building showed the Chevrolet turn its headlights on, drive through the parking lot, and then turn its headlights off again. The video also showed a person sitting in the passenger seat of the Chevrolet with the window down. The Chevrolet's license plate could not be seen in any of the surveillance videos. With the assistance of a local Chevrolet dealer, the police identified the vehicle in the video as a Chevrolet Malibu.

On June 21, 2015, Haney saw Shakerra Carson at a Father's Day party that Haney's mother, Alicia Paschal, was hosting. Carson was a friend of Haney's sister, and she had previously dated Haney. At the party, Haney told Carson that he and his friend "had went somewhere, and something went wrong because somebody got shot." Haney elaborated that he and Jackson went to the restaurant to commit a robbery, and Haney shot the person they robbed because he "flinched" and appeared to be trying to get away.

To aid the ongoing investigation of Smith's murder, the surveillance video taken from the adjacent building was released to local media on June 24, 2015. Alicia Paschal, Haney's mother, saw

the video the next day. She recognized the car shown in the video and knew that it belonged to Jackson's girlfriend, Keshunta Wright.[3] Paschal later told the police that she recognized Haney as the passenger in the vehicle because of a distinctive way he slumped down when he sat in a car. Paschal was familiar with the restaurant where the shooting occurred because Haney had previously worked there. When Paschal saw the initial news of the shooting, she attempted to call Haney and left him a message. She then left another message to say that there had been a murder at the restaurant where Haney had worked. Haney called back and was upset, telling Paschal not to leave messages "like that." According to Paschal, in a later conversation between the two, Haney became irate and screamed at Paschal, saying that the message Paschal left on his phone was "incriminating."

---

[3] Paschal also knew Jackson, testifying that he had eaten meals and stayed at her house in the years that Jackson and Haney were friends.

Carson also saw the news report, and she called Paschal to talk to her about what Haney told Carson about the shooting. Paschal and Carson decided to talk to police about what they had learned. Paschal later confronted Haney, asking him "did you do it?" He replied, "Yeah, Momma." Haney then told Paschal that they had planned only to rob Smith but that he shot Smith because Smith flinched. Haney told Paschal that he and Jackson took Smith's iPhone and destroyed it.

Paschal asked Haney if there was anything she needed to be worried about at her home, and Haney replied, "Nah. Betty is dead, but the children are living." Paschal understood that statement to mean that "Betty" was the gun and that "the children" were the bullets. In his conversation with Paschal, Haney also mentioned that he was concerned about Jackson.

Several days later, Paschal spoke with Jackson. Jackson said that he did not "do it" but admitted that he and Haney went to the restaurant together. Jackson said that "it just went wrong" and that they did not go to kill someone. Jackson told Paschal that he and

Haney had taken a phone from Smith. Paschal relayed this information to the police. She also provided police with assorted possessions belonging to Haney, including a pistol magazine and a box of nine-millimeter Blazer-brand ammunition. The officer who examined the materials Paschal provided also found Haney's employment documentation from the restaurant, old pay stubs, a trigger guard for a nine-millimeter Jimenez gun, and a receipt for the gun. Haney's fingerprint was identified on the Blazer ammunition box.

Carson was also interviewed by the police. She told the police that Haney confessed to her that he shot Smith and that Jackson was with him when the shooting occurred.

At the time of Smith's killing, Jackson did not own a car and would use Wright's car, which was a 2007 Chevrolet Malibu. Jackson was arrested on June 25, 2015, at his workplace. He had driven Wright's car that morning. Police impounded the car and kept it as evidence.

After his arrest, Jackson made a phone call from the jail to Wright. During the call, Jackson asked Wright what exactly was on the surveillance video that had been aired on the local news, and whether the vehicle's license plate was visible. Wright read portions of a news story about Smith's killing to Jackson over the phone. Concerning the video, Jackson said to Wright, "So you know that is your car," and Wright responded, "Yes, yes." In the same call, Jackson told Wright that she did not have to let the police search her home.

At trial, an employee of a pawn shop in Jonesboro testified that, on February 28, 2015, Haney's then-girlfriend, Letasha Fortson-Coates, bought a Jimenez J.A. nine-millimeter handgun, a box of Blazer-brand ammunition, and a holster. Two days later, on March 2, Fortson-Coates returned the first Jimenez J.A. nine-millimeter gun and bought another Jimenez J.A. nine-millimeter handgun from the pawn shop. Haney was present with Fortson-Coates when she purchased the first Jimenez nine-millimeter gun in her name on February 28, and he was present when she exchanged it for the

second Jimenez nine-millimeter gun on March 2. Fortson-Coates testified at trial that she bought the gun and ammunition for Haney. Fortson-Coates did not know what Haney did with the box of ammunition. She later asked Haney for the gun back, and Haney refused. Officers from the Fayetteville Police Department came to Fortson-Coates' home at the end of June 2015 and asked her about her guns. Fortson-Coates initially lied and said that her Jimenez gun had been stolen from her car, and she filed a report of her stolen gun.

The police obtained phone records for a cell phone belonging to Haney.[4] At 1:19 a.m. on June 7, Haney's cell phone pinged off a cell phone tower south of the restaurant in Fayetteville where Smith was killed. At 2:46 a.m., Haney's cell phone pinged off a cell phone

---

[4] A witness from the phone company testified that the cell phone at issue was registered under a different name and that service for the phone had been prepaid. However, in her testimony, Paschal identified the number for the phone Haney was using at the time of Smith's killing. The number she identified matched the number for the phone for which police obtained the records introduced in this case.

tower on the north side of the restaurant. The restaurant was located directly between the two cell phone towers.

At trial, the State presented evidence that, in 2009, Jackson participated in the armed robbery of his friend, Corey Blackwell. The evidence of that robbery showed that Jackson went to the mall with Blackwell. After Blackwell dropped Jackson off at an apartment and was preparing to drive away, Jackson and others opened the door of Blackwell's car, and one of the others held a gun to Blackwell's head, demanding that Blackwell give them "the loot." After a struggle, Blackwell gave Jackson money from his wallet. As Blackwell attempted to drive away, the men who were with Jackson fired guns at the car, hitting Blackwell in his shoulder. Jackson was not armed during this incident, but he took several items from Blackwell. Jackson later pleaded guilty to armed robbery and aggravated assault stemming from the incident with Blackwell.

The medical examiner testified that Smith suffered a gunshot wound to his back and two wounds under his right arm, all of which were caused by a single projectile. The bullet entered Smith's body

on the left side of his back. The medical examiner testified that the projectile moved from left to right, back to front, and slightly upward within Smith's body. The bullet exited his body under his right arm and then caused a second wound to that area of his body before coming to rest. In addition to noting Smith's wounds, the medical examiner also removed glass from Smith's back while conducting the autopsy. The medical examiner testified that Smith died as a result of blood loss due to the gunshot wound to his torso.

Both appellants contend that the evidence presented by the State was insufficient. However, the evidence recounted above was sufficient to authorize a rational jury to find Haney and Jackson guilty beyond a reasonable doubt on each of the counts of which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

### Case No. S19A0351

2. Haney argues that his trial counsel provided ineffective assistance by failing to object to the testimony of a police detective who offered an opinion regarding physical characteristics and the

make and model of the vehicle shown in the surveillance video that was released to the media by the police. Haney also argues that his trial counsel provided ineffective assistance by failing to object to the testimony of Haney's mother, Alicia Paschal, in which she identified the vehicle shown on the news report as Wright's vehicle. To prevail on his claim of ineffectiveness, Haney

> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [Haney] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [Haney] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citations and punctuation omitted.) *Stuckey v. State*, 301 Ga. 767, 771 (2) (804 SE2d 76) (2017) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)).

Here, pretermitting whether trial counsel was deficient for failing to make these objections, Haney has failed to demonstrate

that he was prejudiced because he has not shown a reasonable probability that the result of the proceeding would have been different had the evidence been excluded. The testimony of Paschal and the detective was used to identify the vehicle shown in the video as a Chevrolet Malibu belonging to Keshunta Wright. Even if Haney had been successful in excluding their testimony on this point, other evidence presented by the State, namely the recording of the call between Jackson and Wright, identified the car as Wright's Chevrolet Malibu. Because the car was identified through other evidence, the testimony of Paschal and the detective about the car was duplicative of admissible testimony. See *Jackson v. State*, 288 Ga. 213, 216 (2) (e) (702 SE2d 201) (2010). "The failure of trial counsel to object to such cumulative evidence does not support a claim of ineffective assistance of counsel." (Citation omitted.) *Wilson v. State*, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015). Haney's claims of ineffectiveness regarding this testimony therefore fail.

*Case No. S19A0352*

3. Jackson argues that he received ineffective assistance from his trial counsel due to the failure to object to the testimony of Shakerra Carson and Alicia Paschal in which they recounted statements Haney made to them that implicated Jackson. Jackson argues that the admission of Haney's statements through Carson and Paschal should have been excluded by the trial court as a violation of *Bruton*.

"A defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under *Bruton* when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime." (Citation and punctuation omitted.) *Ardis v. State*, 290 Ga. 58, 60 (2) (a) (718 SE2d 526) (2011). "A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citation and punctuation omitted.) *Lord v. State*, 304 Ga. 532, 537 (5) (a) (820 SE2d 16) (2018).

Here, the statements at issue were made by Haney, who did not testify, to Paschal and Carson. Such statements "were not a

product of interrogation by law enforcement officers during an investigation intended to produce evidence for a criminal prosecution." *Billings v. State*, 293 Ga. 99, 104 (4) (745 SE2d 583) (2013). As such statements were thus not testimonial in nature, Jackson has failed to establish grounds for the trial court to exclude them under *Bruton. Favors v. State*, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015). Accordingly, because any objection to such statements under *Bruton* would have been meritless, Jackson has not established that his counsel's performance was deficient. *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.").

4. Finally, Jackson argues that he received ineffective assistance of counsel due to his trial counsel's failure to object to the introduction of an audio recording of a telephone conversation between Jackson and Keshunta Wright. Jackson argues that his trial counsel should have objected to the playing of the recording on the basis that his statements on the recording constituted

inadmissible hearsay,[5] that his counsel's failure to object to the playing of the recording constituted deficient performance, and that this failure prejudiced him.

The recording at issue contained a protracted discussion between Jackson and Wright about her car, which was impounded by the police when Jackson was arrested. In her trial testimony, Wright could not recall if Jackson had told her what to do in the event police came to search her house. She also could not recall what portions of an online news report concerning Smith's murder Jackson asked her to read over the phone. However, in the recorded call Jackson placed to Wright, he could be heard telling her that she did not have to allow police to search the home, and Wright could be heard describing the substance of a news report about the murder.

Jackson's statements on the recording were admissions of a party-opponent. See OCGA § 24-8-801 (d) (2) (A) ("Admissions shall

---

[5] Jackson does not complain to this Court about any statements made by Wright on the recording.

not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own statement, in . . . an individual . . . capacity[.]") Cf. *Glispie v. State*, 300 Ga. 128, 131 (1) (793 SE2d 381) (2016) (content of outgoing text messages on cell phone are considered defendant's own statements where evidence shows defendant sent the messages). Accordingly, as any objection to the statements made in the recording by Jackson on hearsay grounds would have been meritless, Jackson cannot establish that his trial counsel's performance was deficient on this basis. *Hayes*, 262 Ga. at 884-885 (3) (c).

Judgments affirmed.  All the Justices concur.



Decided May 6, 2019.

Murder. Fayette Superior Court. Before Judge Sams.

Nicholas E. White, for appellant (case no. S19A0351).

Stanley W. Schoolcraft III, for appellant (case no. S19A0352).

Benjamin D. Coker, District Attorney, E. Morgan Kendrick, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.