305 Ga. 822
FINAL COPY

S19A0066.  SPELL v. THE STATE.

BLACKWELL, Justice.

Appellant James Ralph Spell was tried and convicted of two murders, an aggravated battery, an aggravated assault, and two firearm offenses, all in connection with the fatal stabbing of his ex-wife and the fatal shootings of her parents. On appeal, he claims that he was denied the effective assistance of counsel at trial. We find no merit in this claim, but we note that the trial court erred when it failed to merge the aggravated battery and aggravated assault with one of the murders of which Appellant was convicted. Accordingly, we vacate the convictions for aggravated battery and aggravated assault, and we otherwise affirm.[1]

---

[1] Appellant committed his crimes in July 2007. A Wayne County grand jury indicted Appellant in November 2007, charging him with the murder of Amanda Harrison Spell, the murder of Jeaney Harrison, the murder of Gary Harrison, an aggravated battery upon Ms. Harrison, an aggravated assault upon Ms. Harrison, cruelty to children, the unlawful possession of a firearm during the commission of a felony, and the unlawful possession of a firearm by

1. Appellant and Amanda Harrison Spell married in 2004 and divorced in 2005. Even after their divorce, they sometimes would get together, and on the evening of July 30, 2007, Amanda visited Appellant at his home. Early the next morning, Appellant went to the Wayne County home that Amanda shared with her parents, Gary and Jeaney Harrison. Appellant confronted Amanda and accused her of having stolen $150 from his wallet. They argued, and at some point, Amanda drew a .22-caliber revolver. Appellant disarmed her, and he then fired a round into the sofa on which she was seated.

a convicted felon. The prosecution gave notice of its intent to seek the death penalty, and the trial court moved venue to Glynn County for purposes of trial. In January 2012, Appellant was tried by a Glynn County jury. The trial court acquitted him by directed verdict of the murder of Mr. Harrison and of cruelty to children, and the jury found him guilty on all the remaining charges. After a sentencing trial, the jury declined to impose the death penalty. The trial court sentenced Appellant to consecutive terms of imprisonment for life without the possibility of parole for the murders of Amanda and Ms. Harrison, consecutive terms of imprisonment for twenty years for the aggravated battery and aggravated assault, and consecutive terms of imprisonment for five years for each of the firearm offenses. Appellant timely filed a motion for new trial, which he amended in August 2015. The trial court denied the motion for new trial in October 2017, and Appellant timely filed a notice of appeal. His appeal was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

Having heard a gunshot, Mr. Harrison then emerged from a bedroom, carrying a 12-gauge shotgun. He fired or attempted to fire the shotgun at Appellant, but Appellant was not wounded in either event. At that point, Appellant fatally shot Mr. Harrison with the revolver and retrieved the shotgun. As Ms. Harrison ran from the house, Appellant shot her in the back with the shotgun.[2] Appellant then grabbed a knife from the kitchen and found Amanda in a bedroom to which she had retreated. He said to her: "See what you made me do? All you had to do was give me my motherf***ing sh*t." He then fatally stabbed Amanda.

Appellant left the scene, and he was apprehended the next day as he was preparing to flee to Mexico. At the time of his apprehension, Appellant urged the arresting officers to shoot him. Following his arrest, Appellant confessed that he had shot the Harrisons and that — just before he "ripped [Amanda] open" with the knife — he told her that "all this could've been avoided" if she

---

[2] Ms. Harrison was wounded but escaped to the home of a neighbor. Her wounds, however, proved fatal, and she died four days later.

had returned his money.

(a) Appellant does not dispute that the evidence is legally sufficient to sustain his convictions, but consistent with our usual practice in murder cases, we nevertheless have reviewed the evidence and considered its sufficiency. Viewed in the light most favorable to the verdict, we conclude that the evidence adduced at trial is sufficient to authorize a rational trier of fact to find Appellant guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

(b) Appellant does not raise any merger error, but we have discretion to correct merger errors on direct appeal, see Nazario v. State, 293 Ga. 480, 486-487 (2) (b) (746 SE2d 109) (2013), and here, we note that the trial court erred when it failed to merge the aggravated battery of Ms. Harrison and the aggravated assault upon Ms. Harrison with her murder. The murder, aggravated battery, and aggravated assault all are based upon the same act — Appellant shooting Ms. Harrison in the back with a shotgun. Accordingly, we

vacate the convictions for aggravated battery and aggravated assault. See Sullivan v. State, 301 Ga. 37, 43 (3) (799 SE2d 163) (2017).

2. Appellant claims that he was denied the effective assistance of counsel when his lawyers failed to object to evidence that was, he says, inadmissible under Mallory v. State, 261 Ga. 625 (409 SE2d 839) (1991), and when they failed to object to the prosecuting attorney referencing the same evidence in his closing argument. In Mallory, this Court announced as a categorical rule that evidence that an accused failed to come forward to law enforcement prior to his arrest is "far more prejudicial than probative" and is, therefore, inadmissible. 261 Ga. at 630 (5).[3] In this case, the prosecution presented evidence that, after shooting the Harrisons and stabbing Amanda, Appellant went to the home of his best friend, Derrick Jones, and subsequently spoke again with Jones by telephone. Jones

---

[3] Mallory was decided under our old Evidence Code, and this case was tried under the old Evidence Code. We note, however, our recent decision in State v. Orr, 305 Ga. 729, 736 (2) (827 SE2d 892) (2019), in which we held that the Mallory rule was abrogated by the adoption of our new Evidence Code.

testified that, on both occasions, he urged Appellant to go to the police. Appellant responded that he "couldn't" go to the police, Jones said, because he was scared. The prosecuting attorney briefly referred to this evidence in closing argument:

> [Appellant] is a man who [has] been told several times to turn himself in, but he's going to Mexico. I'm sorry, is that what a guilty man does? Of course. Is that what someone who's innocent, who has no — who has — I was just defending myself. I need to go talk to the police. No. You don't flee to Mexico if you've done nothing wrong.

Appellant's lawyers objected to neither the evidence nor the argument.

To prevail on a claim of ineffective assistance, Appellant must prove both that the performance of his lawyers was deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyers was deficient, Appellant must show that his lawyers performed their duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See

id. at 687-688 (III) (A). See also <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyers, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U. S. at 694 (III) (B). This burden is a heavy one, see <u>Kimmelman</u>, 477 U. S. at 382 (II) (C), and Appellant has failed to carry it.

By the time Jones testified, the prosecution already had presented overwhelming evidence that Appellant had killed Amanda and both of her parents and that the killings of Amanda and her mother were unlawful homicides. Although the evidence presented by the prosecution to that point suggested that Appellant may have been justified in killing Mr. Harrison, the evidence made out a strong case that he was not justified in killing Amanda or Ms. Harrison. By that point, his lawyers had become convinced that he likely would be found guilty of unlawfully killing Amanda and her

mother — either as murder or voluntary manslaughter — and to the extent that he was found guilty of one or more murders, his lawyers were worried about the death penalty.

The testimony by Jones about which Appellant now complains — that Jones urged Appellant to go to the police but Appellant said he "couldn't" because he was scared — added little to the prosecution's strong case. To the extent that this testimony suggested consciousness of guilt, it did so no more strongly than evidence that Appellant was preparing to flee to Mexico when he was apprehended and that he urged the arresting officers to shoot him. For these reasons, the testimony had a limited downside for Appellant. Moreover, there was a potential upside to Jones's testimony. As one of the lawyers explained at the hearing on the motion for new trial, Jones's emotional testimony about his best friend — which linked Appellant's failure to go to the police with his statements that he was scared — was "very powerful" and would tend to humanize Appellant in the eyes of the jury. Humanizing Appellant would be especially important, of course, to lawyers like

Appellant's, who had reasonably become concerned about the possibility of the death penalty.[4]

Considering all of the circumstances with which Appellant's lawyers were presented when Jones gave the testimony about which Appellant now complains — the limited downside of that testimony, its potential upside, the other strong evidence against Appellant, and the looming threat of a sentencing trial and possible death sentence — it was not unreasonable for the lawyers to forgo an objection to Jones's testimony. See Marshall v. State, 299 Ga. 825, 827 (2) (a) (792 SE2d 350) (2016). Moreover, in light of the other strong evidence against Appellant, we see no reasonable probability that an objection to this evidence would have produced a different and more favorable outcome for Appellant. See Blaine v. State, 305 Ga. 513, 521 (4) (826 SE2d 82) (2019) ("[T]rial counsel cannot be ineffective for failing to raise claims that would not have . . . made any difference in the outcome of [the defendant's] case."). Appellant

---

[4] We note that Appellant's lawyers were at least partially successful; the jury ultimately declined to impose the death penalty.

has failed to prove that he was denied the effective assistance of counsel when his lawyers failed to object under Mallory.

Appellant likewise has failed to establish that his lawyers rendered ineffective assistance when they failed to object to the prosecuting attorney referencing Jones's testimony in his closing argument. In the first place, Appellant having strategically forgone an objection to the testimony itself, that testimony — even if it might have been objectionable under Mallory when offered[5] — was properly in evidence by the time of closing argument. See Sanders v. State, 290 Ga. 637, 640-641 (4) (723 SE2d 436) (2012). Moreover, the reference in closing argument was brief, and it was commingled with references to the evidence that Appellant was preparing to flee to Mexico, which separately and at least as strongly suggested a consciousness of guilt. Especially in light of the other strong evidence against Appellant, there is no reasonable probability that an objection to the closing argument of the prosecuting attorney

---

[5] The State has not asked us in this case to reconsider "whether Mallory's exclusionary rule should continue to be applied to cases governed by the old Evidence Code." Orr, 305 Ga. at 736 (2) n.6.

would have produced a different outcome for Appellant. See <u>Blaine</u>, 305 Ga. at 521 (4).

<u>Judgment affirmed in part and vacated in part. All the Justices concur.</u>

Decided May 20, 2019.

Murder. Glynn Superior Court. Before Judge Scarlett.

<u>Betsey L. Tate, Katherine L. Dodd</u>, for appellant.

<u>Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Thomas E. Buscemi, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General</u>, for appellee.