306 Ga. 783
FINAL COPY

S19A0594.  WEST v. THE STATE.

BENHAM, Justice.

Appellant Geno West appeals his convictions for felony murder and other crimes in connection with the shooting death of Marcus Simpson.[1] He argues that the evidence presented at his trial was

[1] The crimes occurred on July 1, 2008. On February 2, 2010, a Fulton County grand jury indicted Appellant, Antonio Harris, and Rontryuas Harris for malice murder, felony murder predicated on aggravated assault, aggravated assault with a deadly weapon of Simpson, aggravated assault with a deadly weapon of Kenneth Williams, aggravated assault with a deadly weapon of Kingston Ridley, and possession of a firearm during the commission of a felony (aggravated assault). Appellant was separately indicted for felony murder predicated on possession of a firearm by a convicted felon and possession of a firearm by a convicted felon, both in connection with Simpson's death.

Appellant, Antonio, and Rontryuas were tried jointly from September 12 to 20, 2011. A jury found Appellant not guilty of malice murder and felony murder predicated on possession of a firearm by a convicted felon but guilty on all other counts. The trial court sentenced Appellant as a recidivist to serve life in prison for felony murder, two consecutive terms of 20 years in prison for the aggravated assaults of Williams and Ridley, and five years in prison for each of the two counts of firearm possession. The remaining count merged for sentencing. Rontryuas was found not guilty on all counts, and Antonio's case is not part of this appeal.

Appellant filed a motion for new trial on October 3, 2011, which he amended twice through new counsel. Following a hearing, the trial court denied the motion (as amended) on July 17, 2015. Appellant filed a notice of appeal to this Court, and this case was docketed to the April 2019 term and thereafter submitted for a decision on the briefs.

legally insufficient to support his convictions, that the trial court violated his right to full and fair appellate review by failing to follow the proper procedure for supplementing the record, and that his trial counsel rendered constitutionally ineffective assistance. We affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at Appellant's trial showed the following. Kingston Ridley, his girlfriend Terica Marable, and her children lived in one unit of a duplex in Fulton County. In April 2008, Appellant's cousin and co-indictee Antonio Harris rented the duplex's other unit. Though Antonio leased the unit, his brother and co-indictee Rontryuas moved in. In May 2008, before Rontryuas moved in, the brothers hired Victor Powell to run cable to their unit. To this end, Powell climbed a nearby utility pole to illegally connect the brothers' unit to the main cable line. When he came down, a police officer was waiting to arrest him. Several weeks later, Antonio complained to Powell that the unit's cable was not working. Powell returned to the unit, went back up the pole, and saw that the cable line had been connected to Ridley's unit; he disconnected that line

2

and connected the line for Antonio's unit. Ridley came out of his unit and asked Powell to hook the cable back up; Powell refused to do so unless he was paid. When Powell went inside Antonio's unit, Ridley heard Powell tell someone to bring his pistol outside. Later that evening, Antonio called Powell again to report that the cable was not working.

Late in the evening on July 1, 2008, Ridley, Simpson, Kenneth Williams, Brian Brown, and Tredon Tarver were sitting on the front porch of the duplex drinking beer and eating pizza. Either Appellant or Antonio came out of their unit and asked the men, "Why y'all motherf***ers tear down our cable?" Ridley responded, "Ain't nobody took none of your cable." Then, shots were fired. Antonio fired the first shot, which hit the ground, and Appellant moved Antonio out of the way and started shooting. Brown was inside the duplex during the shooting and estimated that he heard between eight and ten gunshots. Williams, who was shot in the knee, jumped off the porch and played dead. Ridley was shot in the left thigh and fled the scene. Simpson, who was asleep on the porch steps, was shot

3

in both the head and the back, injuries which resulted in his death. Neither Ridley nor any of his companions were armed. Both Williams and Ridley testified that they saw Appellant shooting, and Brown and Tarver testified that Appellant was present on the porch immediately before and during the shooting. From the scene, investigators recovered six nine-millimeter cartridge cases, which were fired from the same weapon, and five .380 cartridge cases, which were all fired from a second weapon.

Because the victims knew Appellant only by his nickname "Twon," law enforcement was not readily able to identify Appellant as a suspect. In January 2010, Appellant, who was on probation for a 2009 conviction, saw Marable, Ridley's girlfriend, at the Atlanta probation office. Appellant approached Marable and asked whether she remembered him; he then asked, "[Are] your people going to court on that?" Appellant then went outside and called someone on his cellphone while watching Marable through the window. Marable felt threatened and told a probation officer that she saw someone at the probation office who had committed a murder at her apartment.

4

The probation officer referred Marable to the Atlanta Police Department, and, after viewing a photo lineup, Marable identified Appellant as one of the shooters. Law enforcement then created a six-person photographic lineup, from which several other witnesses identified Appellant as being involved in the shooting.

Appellant testified in his own defense that, on the night of the shooting, he rode with Antonio to the duplex so that Antonio could let someone in. Appellant testified that, while he was waiting by the car for Antonio, he heard gunshots and then fled the scene.

1. Appellant argues that the evidence presented at trial was legally insufficient to support his convictions because he was not identified as a suspect until one-and-a-half years after the crime and because the testimony of certain witnesses was inconsistent as to who exactly was shooting on the night of the crimes. We review the sufficiency of the evidence in the light most favorable to the jury's verdicts, and we defer to the jury's assessment of the weight and credibility of the evidence. See *Jackson v. Virginia*, 443 U. S. 307 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The evidence presented

5

at trial and recounted above – which included the testimony of multiple eyewitnesses identifying Appellant as a shooter – was sufficient to authorize a reasonable jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See id.

2. Appellant filed a timely notice of appeal to this Court on July 27, 2015, but on December 2, 2016, the Clerk of this Court returned the record to the trial court as incomplete because State's Exhibit 2, a recording of several 911 calls in which callers reported the shooting, was omitted. On September 13, 2017, Appellant filed in the trial court a motion to complete the record for his appeal in which he specifically requested that he be granted a new trial if the 911 recording could not be located.

On March 13, 2018, the trial court held a hearing on Appellant's motion. At that hearing, the chief clerk of courts testified that, according to her records, no copy of the 911 recording was submitted to the clerk's office after trial. The trial court took judicial notice of the fact that, in that court after trial, the court reporter is

6

the custodian of evidence until the evidence is transmitted to the "court reporter vault," where exhibits remain until their transfer to the clerk's office. The trial court then recessed, directing the court reporter and the parties to check the vault for the recording and directing the State to determine whether it possessed a second copy of the recording. The State located a certified transcript of the recording, which the trial court admitted for limited demonstrative purposes. The parties informed the trial court that an evidence log in the vault indicated that the court reporter had deposited the recording there; the parties, however, were unable to locate the missing recording.

The trial court continued the hearing and directed the State to make additional efforts to locate a copy of the recording. When the hearing resumed on May 15, 2018, the State informed the court it was unable to locate a copy of the recording. Appellant's appellate counsel again objected to supplementing the record with the transcript of the recording, arguing that she never heard the recording and could not independently verify the transcript's

7

authenticity. The trial court thereafter ordered that the record be supplemented with the certified transcript of the 911 recording. The trial court explained that, in light of the significant evidence adduced at trial showing Appellant's guilt, the recording would have little, if any, bearing on Appellant's appeal and that the loss of the recording did not entitle him to a new trial.

On appeal, Appellant contends that the trial court failed to follow the procedure, as provided in OCGA § 5-6-41 (g),[2] for supplementing the trial record; that the trial court erred in supplementing the record with a transcript of the lost recording; and

---

[2] OCGA § 5-6-41 (g) provides:

> Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

that, as a result, he has been denied his right to full and fair appellate review of his convictions.

Where, as here, an otherwise complete record "is missing only one or a few parts of the trial, the appellant is not entitled to a new trial unless he alleges that he has been harmed by some specified error involving the omitted part and shows that the omission prevents proper appellate review of that error." *Gadson v. State*, 303 Ga. 871, 878 (3) (a) (815 SE2d 828) (2018). Here, Appellant contends only that his appellate counsel cannot determine whether any errors occurred when the 911 recording was played for the jury and, as a consequence, is prevented from adequately representing Appellant on appeal. He makes a generalized assertion of harm but fails to raise any specific objection to matters that occurred during this portion of the trial; his only objection is to the recording's omission from the record. "Because Appellant has not shown that he has been prevented from raising any viable issue on appeal or otherwise harmed as a result of the minimally incomplete record, we affirm his . . . convictions." Id. at 877. Compare *Johnson v. State*, 302 Ga.

188, 198 (3) (c) (805 SE2d 890) (2017) ("[W]here the *whole* original verbatim transcript of his trial is lost and the narrative re-creation is *manifestly* inadequate, [an appellant] has not been given a fair opportunity to identify any trial errors and resulting harm or deficient performance by counsel and resulting prejudice." (emphasis in original)); *Sheard v. State*, 300 Ga. 117, 120-121 (2) (793 SE2d 386) (2016) (new trial warranted where re-created trial transcript excluded a "crucial portion" of the trial and appellant alleged harm as a result of the missing portion).

3. Finally, Appellant asserts that his trial counsel rendered constitutionally ineffective assistance by eliciting testimony on cross-examination that, Appellant argues, impermissibly shifted the burden of proof. Specifically, the lead investigator testified, in response to being asked whether he was aware that one of the occupants of Ridley's unit was on probation and had an active bench warrant for his arrest, that, had Appellant or one of his co-indictees "come forward" with that information, then "that would have changed things."

To succeed on his claim of ineffective assistance, Appellant

> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [Appellant] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [Appellant] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

*Haney v. State*, 305 Ga. 785, 790 (2) (827 SE2d 843) (2019).

Appellant has not met this burden.

Even assuming that trial counsel's failure to object constitutes deficient performance, Appellant has not articulated, either to this Court or to the trial court below, how the investigator's isolated statement affected the jury's verdict. See *Davis v.* State, 306 Ga. 140, 144 (3) (a) (829 SE2d 321) (2019) ("[T]his Court is not required to scour the record for support for an appellant's arguments."). Further, "in light of the other strong evidence against [him], we see no reasonable probability that an objection to this [testimony] would

11

have produced a different and more favorable outcome for [Appellant]." *Spell v. State*, 305 Ga. 822, 826 (2) (828 SE2d 345) (2019). See also *Blaine v. State*, 305 Ga. 513, 521 (4) (826 SE2d 82) (2019) ("Trial counsel cannot be ineffective for failing to raise claims that would not have . . . made any difference in the outcome of [the defendant's] case."). This claim thus fails.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 2019.
Murder. Fulton Superior Court. Before Judge Dempsey.
*Dawn M. Belisle*, for appellant.
*Paul L. Howard, Jr.,* District Attorney, *Lyndsey H. Rudder, Stephany J. Luttrell, Teri B. Walker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General,* for appellee.