309 Ga. 843
FINAL COPY

S20A0878.  SATTERFIELD v. THE STATE.

ELLINGTON, Justice.

A Muscogee County jury found Patrick Satterfield guilty of felony murder and other crimes in connection with the death of Richard Boynton.[1] On appeal, Satterfield contends that the evidence was insufficient to support the verdicts and that his trial counsel was ineffective. We affirm for the reasons set forth below.

Satterfield and Christopher Young were tried together in 2010

---

[1] Boynton was killed on December 5, 2008. A Muscogee County grand jury indicted Satterfield and Christopher Young for malice murder, felony murder predicated on burglary, burglary, armed robbery, and possession of a firearm during commission of a crime. Young was also indicted for possession of a firearm by a first offender and possession of marijuana.  Satterfield and Young were tried together in September 2010.  The jury found them not guilty of malice murder, and the first offender gun possession charge against Young was nol prossed. The jury found Satterfield and Young guilty of the remaining charges. Satterfield was sentenced to life in prison for felony murder. He received twenty-year sentences for the burglary and armed robbery counts to run concurrently with the felony murder sentence and a consecutive five-year sentence for the firearm possession count. Satterfield filed a timely motion for new trial which he amended three times. A hearing on the motion was held on February 24, 2015, and the motion was denied on February 5, 2019. However, the trial court vacated the burglary sentence because the burglary count merged into the felony murder count.  Satterfield's timely appeal was docketed in this Court to the April 2020 term and submitted for decision on the briefs.

and convicted of the felony murder and armed robbery of Boynton, among other counts. Neither Satterfield nor Young testified in his defense. Viewed in a light most favorable to the jury's verdicts, the evidence showed

that the 78-year-old victim was shot inside his Muscogee County home on December 5, 2008, and died as a result of a single gunshot wound to the chest. Entry to the home had been gained by breaking a bedroom window. Several of the victim's grandsons who occasionally lived with him testified that the glass doors of a gun cabinet had been shattered and the contents (two handguns and several old rifles and shotguns) removed, and a shoebox containing $7,000 that one grandson[, Raimone Boynton,] had stored in a closet had been emptied. Dominic Tinch, who admitted driving [Young] and Satterfield to and from the crime scene, testified against his cohorts in exchange for immunity from prosecution of the charges surrounding the death of Mr. Boynton.

Tinch testified that Satterfield had contacted him about stealing money from a house and, during the evening the victim was killed, Tinch met Satterfield and Young. Using Tinch's car, the trio drove to within a block of the victim's house. After [Young] and Satterfield exited Tinch's vehicle, Tinch drove around the corner and parked in front of an empty house; he was instructed via a phone call from Satterfield to approach the victim's house and ascertain if anyone was home by ringing the doorbell and knocking on the door. Tinch did as instructed and called Satterfield to report that no one was at home. Shortly thereafter, Tinch, now driving his vehicle, picked up Satterfield, who reported that someone had been in the

house. Tinch and Satterfield then met [Young], who was carrying three rifles and a handgun, near the side of the victim's home. Tinch testified that [Young] stated he "shot him" as [Young] entered Tinch's car. [Demarco Jones, a] neighbor of the victim[,] testified that Satterfield told him the day after the shooting that [Young] had shot the victim after Satterfield and [Young] had entered the victim's home through a window.

*Young v. State*, 291 Ga. 627, 628-629 (1) (732 SE2d 269) (2012).

1.  Satterfield contends that the evidence was insufficient to support his convictions. He argues that although the victim's neighbor, Jones, testified that Satterfield told him that he and Young entered the victim's house, Jones's testimony was both seriously discredited and showed no more than Satterfield was in the house when Young shot the victim.

> When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

*Harper v. State*, 298 Ga. 158, 158 (780 SE2d 308) (2015) (citation and punctuation omitted).  Viewed in a light most favorable to the

jury's verdicts, the evidence showed that Satterfield, Young, and Tinch drove to the victim's house pursuant to a plan to steal money from within the victim's house and that Satterfield and Young entered the house without authority. See former OCGA § 16-7-1 (a) ("A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another[.]"). Young shot the victim, who died of a gunshot wound to the chest, and then left carrying several firearms that he had taken from inside the house. "[P]roof that a victim was shot and killed during the [burglary] is sufficient to support a felony murder conviction regardless of which conspirator fired the fatal shot." *Butts v. State*, 297 Ga. 766, 770 (2) (778 SE2d 205) (2015). See also OCGA § 16-2-20 (defining parties to a crime); *Williams v. State*, 276 Ga. 384, 385 (3) (578 SE2d 858) (2003) ("A party to a felony may be convicted for any murder that occurs as a result of the commission of that felony, without regard as to whether he commits, intended to commit, or acted to commit the murder of the victim.") (citation and punctuation omitted). Any

rational trier of fact could have found Satterfield guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson*, 443 U. S. at 319 (III); *Young*, 291 Ga. at 629 (1).

2. Satterfield contends that his trial counsel was ineffective because she (1) failed to request a charge on the defense of abandonment, (2) failed to object to the leading questions posed by the prosecutor to witness Raimone Boynton, and (3) failed to object during closing argument when the prosecutor commented on Satterfield's pre-arrest silence. As discussed below, these claims have no merit.

To prevail on a claim of ineffective assistance of counsel, Satterfield must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344

(3) (745 SE2d 637) (2013). This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). To show prejudice, Satterfield must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). If Satterfield fails to satisfy either part of the *Strickland* test, we need not address the other part. See *Brown v. State*, 302 Ga. 454, 457 (2) (807 SE2d 369) (2017).

(a) Satterfield contends that his trial counsel was ineffective in failing to request a jury charge on the defense of abandonment. See OCGA § 16-4-5 (a) ("When a person's conduct would otherwise constitute an attempt to commit a crime, . . . it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal

purpose."). Satterfield argues that a charge was authorized because there was at least slight evidence to support it. See, e.g., *Garner v. State*, 303 Ga. 788, 790 (2) (815 SE2d 36) (2018) (slight evidence is sufficient to authorize the giving of a requested jury instruction). Satterfield argues that a trier of fact could have drawn the conclusion that he never went inside the victim's house and that he did not know what happened in the house until being informed by Young.

We disagree with Satterfield that the evidence supported a charge on abandonment. OCGA § 16-4-5 (a) provides that an abandonment must be "a voluntary and complete renunciation of [the] criminal purpose." Such a renunciation does not include "[a] belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose[.]" OCGA § 16-4-5 (b) (1).

Tinch's testimony showed that he picked up Satterfield shortly after he called Satterfield with the information that no one had

answered the door at the victim's residence. Tinch asked "what happened," and Satterfield responded "somebody was there." Tinch then drove around for "a while" before seeing Young coming from the side of the victim's house carrying weapons. When Young got in the car, he told Satterfield and Tinch that he "had shot [the victim]."

Jones's testimony showed that Satterfield admitted entering the victim's home and then leaving after Young shot the victim. On the other hand, Jerriel Brooks, who knew Satterfield from work, testified that Satterfield told him that he knew about a plan to rob his "home boy's" grandfather and went with others to the scene, but that he did not know who went in the house as he was "two houses . . . down," and wanted nothing to do with the planned robbery.

Neither Jones's nor Tinch's testimony showed that Satterfield voluntarily abandoned his criminal purpose within the meaning of OCGA § 16-4-5. Jones's testimony shows that Satterfield did not abandon an attempted burglary as Satterfield admitted to leaving the scene only after entering the house. Tinch's testimony indicates at most that Satterfield left the scene because he encountered

circumstances that rendered the burglary more difficult or his apprehension more likely, or both. See *Younger v. State*, 288 Ga. 195 (702 SE2d 183) (2010) (where appellant fled during an attempted robbery after being confronted, the evidence did not show abandonment but a response to circumstances that increased the probability of apprehension and made accomplishing the criminal purpose more difficult); *Hayes v. State*, 193 Ga. App. 33, 36-37 (7) (387 SE2d 139) (1989) (trial court did not err by failing to give appellant's requested charge on abandonment as there was no evidence that the attempt was abandoned for any reason other than that appellant fled when discovered). And Brooks's testimony showed that Satterfield had maintained he was merely present near the scene and wanted nothing to do with the robbery — a claim that he never committed a crime, as opposed to having abandoned an attempt to commit a crime. See *Spivey v. State*, 243 Ga. App. 785, 788 (2) (534 SE2d 498) (2000) (where conduct does not constitute an attempt to commit a crime, OCGA § 16-4-5 is not applicable). Trial counsel was not deficient in failing to request a charge that the

evidence did not support. See *Thornton v. State*, 307 Ga. 121, 127 (3) (b) (834 SE2d 814) (2019) (trial counsel was not deficient in failing to request a jury instruction that was not authorized by the evidence).

(b) Satterfield contends that his trial counsel was ineffective in that she did not object to the prosecutor's leading questioning of Raimone Boynton, the victim's grandson. Raimone's testimony showed that he kept cash in a shoe box in a closet in the house when he lived with the victim. According to Raimone, $7,000 was in the shoe box two days before the murder, and no money was in the shoe box on the morning after the murder. The prosecutor showed Raimone a photograph and asked him if he recognized what it showed. Raimone responded, "Yes, that's the mess they made when they came in the house, whoever came in the house." The prosecutor then asked:

> Q. You . . . talked about the mess that these defendants made when they went into the house; is that accurate?
>
> A. Yes.

. . .

Q. And when you got there and saw, of course, the mess that these defendants had made, where was [the shoe box]?

A. It was on the floor.

Satterfield maintains that the prosecutor improperly suggested the desired answers and improperly assumed that "these defendants" had created the mess, a fact that the witness did not know and which was not directly in evidence.

At the hearing on Satterfield's motion for new trial, trial counsel agreed that the prosecutor's questioning assumed facts not in evidence and was contrary to Raimone's testimony that he did not know who had been in the house, but she also testified that, "[i]f I can explain on that one, I did not take the position that it was . . . significantly prejudicial." A reasonable lawyer could have assessed that the prosecutor's questions, if improperly worded, were not significantly harmful in that Raimone's testimony otherwise made it clear that he did not have personal knowledge of who created the mess depicted in the photograph. A reasonable lawyer could have also assessed that an objection "would only draw attention to the

testimony." *Sears v. State*, 292 Ga. 64, 70 (5) (b) (734 SE2d 345) (2012). Nor can Satterfield show he was harmed in any meaningful way by his counsel's failure to object. See id. Satterfield does not show that his trial counsel was deficient or that he was prejudiced by the alleged deficiency.

(c) Satterfield contends that his trial counsel was ineffective in allowing the prosecutor to comment on his pre-arrest silence. During his initial closing argument, the prosecutor said that Satterfield's counsel might "say that her client was on the outside." He then argued:

> Even if you believe he was only outside, even if you just believe he was outside, he's still guilty of these charges by taking part in them, by helping plan them. There is no question about that. He didn't call 911. There's no evidence of that. Nothing like that in the case.

Pursuant to Georgia's former Evidence Code, which was in effect at the time of Satterfield's trial, this Court in *Mallory v. State*, 261 Ga. 625, 630 (409 SE2d 839) (1991), "established a bright-line rule prohibiting the State from commenting on a defendant's pre-arrest silence, or failure to come forward, on the ground that such

comments were far more prejudicial than probative." *Kennebrew v. State*, 299 Ga. 864, 872 (2) (792 SE2d 695) (2016) (citation and punctuation omitted). See *Spell v. State*, 305 Ga. 822, 824 (2) (828 SE2d 345) (2019) (accord). Satterfield contends that the prosecutor's comments were a clear violation of the then-applicable *Mallory* rule.[2]

Assuming but not deciding that trial counsel was deficient for failing to object to the prosecutor's argument on the ground that it violated the *Mallory* rule, Satterfield does not show prejudice. The evidence was strong that Young entered the house and shot the victim, and that Satterfield was involved in planning the burglary, traveled to the victim's house with Young and Tinch for the purpose of stealing money from inside the victim's home, and then left the scene with Young and Tinch after the victim was shot and the firearms were stolen. The defense, which portrayed Satterfield as having committed at most an attempted burglary, also admitted

---

[2] The *Mallory* rule was abrogated by the adoption of our new Evidence Code. See *State v. Orr*, 305 Ga. 729, 736 (2) (827 SE2d 892) (2019).

through trial counsel's closing argument that Satterfield "made a substantial step towards the commission of a burglary." In light of the strength of the evidence that Satterfield was a party to the crimes of which he was convicted, it was not reasonably likely that the prosecutor's comment on Satterfield's failure to call 911 or take like action affected the outcome of the trial. See *Williams v. State*, 305 Ga. 776, 781 (2) (d) (827 SE2d 849) (2019) (in light of the strength of the evidence, no prejudice resulted from trial counsel's failure to raise a *Mallory* objection to the prosecutor's argument); *Oree v. State,* 280 Ga. 588, 593 (5) (630 SE2d 390) (2006) (trial court's error was harmless in light of overwhelming evidence of appellant's role as party to the crime). It follows that Satterfield cannot show that his trial counsel was ineffective.

(d)  Satterfield also argues that his trial counsel's errors, when considered together, likely affected the outcome of his trial.[3] We

---

[3] The prejudicial effect of trial counsel's errors are viewed cumulatively. See *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." (citation and punctuation omitted)).

assumed in Division 2 (c) that trial counsel was deficient in failing to object to the prosecutor's comment on Satterfield's pre-arrest silence and we considered the prejudicial effect of that assumed deficiency. Satterfield has failed to show that his trial counsel was otherwise deficient. Accordingly, this claim of ineffectiveness presents nothing more for review.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided September 28, 2020.

Murder. Muscogee Superior Court. Before Judge Gottfried.
*John M. Shelnutt*, for appellant.
*Julia F. Slater, District Attorney, Frederick Lewis, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.