**SECOND DIVISION**
**DOYLE, P. J.,**
**RICKMAN, P. J., and DAVIS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 27, 2025**

# In the Court of Appeals of Georgia

A25A1402. GRIER v. THE STATE.
A25A1403. GRIER v. THE STATE.

DAVIS, Judge.

In these companion cases stemming from convictions for rape and other offenses, Iglesias Grier and Marlo Grier[1] appeal from the trial court's order denying their motions for new trial. In A25A1402, Iglesias argues that (1) the evidence was insufficient to sustain his convictions; (2) the trial court erred by denying his motion to suppress photographs of his tattoo; (3) the trial court erred by allowing a witness to testify about the contents of a video recording without producing the video; (4) his trial counsel rendered ineffective assistance of counsel; and (5) the trial court

---

[1] Because the defendants share the same last name, for ease of reference, we will refer to them by their first name.

committed plain error by failing to instruct the jury on mistake-of-fact. In A25A1403, Marlo argues that (1) the evidence was insufficient to sustain his convictions; (2) the trial court abused its discretion by allowing certain testimony into evidence at trial; (3) the trial court erred by charging the jury on conspiracy; (4) his trial counsel rendered ineffective assistance of counsel; and (5) the cumulative effect of the errors requires a new trial. For the reasons that follow, in both cases, we affirm the convictions and sentences and the denials of the motions for new trial.

Viewed in the light most favorable to the verdicts,[2] the evidence at trial showed the following. On August 26, 2016, S. H., who was 14 years old at the time, was walking to school when a man, later identified as Iglesias, drove up to her and asked whether she wanted to "skip school," and S. H. replied, "Yes." S. H. got into Iglesias' vehicle, and he took her to his cousin Marlo's home on Windsor Downs Lane in Decatur, Georgia. After arriving at the home, S. H. went into the living room with Iglesias and Marlo and "smoked." She later went upstairs with Iglesias to one of the bedrooms and "had sex" with him on the floor. Iglesias then told her to go to Marlo's bedroom where Marlo proceeded to kiss her thigh and buttocks. At some point,

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Iglesias joined S. H. and Marlo in Marlo's bedroom, and S. H. "had sex" with both of them. Afterwards, Marlo gave S. H. a cell phone to use to contact Iglesias. S. H. and Iglesias made plans to meet the following Tuesday, and he told her to "bring a friend." S. H. testified that she thought the friend was for Marlo since she had already been intimate with Iglesias.[3]

Days later on August 30, 2016, S. H. and two of her classmates, K. D. and T. S., who was 16 years old at that time, made plans to skip school and go to a nearby lake. After they got to the lake, S. H. asked them to "go to this guy's house." K. D. wanted to go back to school, and T. S. initially said no, but S. H. "kept pushing her," and T. S. ultimately agreed to go. Shortly thereafter, Iglesias arrived at the lake, picked up S. H. and T. S., and drove them to Marlo's house. At some point, Marlo and Iglesias went to the store and returned with "shot bottles" and "peach vodka." Marlo and Iglesias gave T. S. an alcoholic drink, while S. H. smoked "weed." T. S., S. H., Iglesias, and Marlo then went upstairs to Marlo's bedroom, and on the way, T. S. "tumbled up the stairs" and she noticed that she "felt a little different" and "could barely . . . walk normal." After they reached the bedroom, Marlo "jok[ed] around

---

[3] The August 26, 2016 incident is the basis for the statutory rape (Count 9) charge.

sexually" with both girls and encouraged them to watch a pornographic video, and Iglesias played a pornographic video on the television. S. H. and T. S. then laid down in Marlo's bed where Iglesias touched T. S.'s chest, kissed her neck, pulled down her underwear, and tried to "force" his penis inside her vagina. At some point, S. H. recorded T. S.'s assault on a cell phone. T. S. tried to get up and leave, and she repeatedly told Iglesias to "stop," but he placed his penis inside her vagina. At the same time, Marlo also got into the bed with Iglesias, S. H., and T. S., and he had sex with S. H. and encouraged her to "touch" T. S. as Iglesias forcibly penetrated T. S. After Iglesias finished assaulting T. S., he performed oral sex on S. H.

As Iglesias took S. H. and T. S. back to school, S. H. had to hold T. S.'s arms because she was not "walking right," and T. S. testified that she "felt drunk." As S. H. and T. S. approached T. S.'s school bus, T. S. fell and had to be helped onto the bus. The bus driver, whom T. S. was familiar with, observed that as T. S. sat in her seat, she was "leaning over with her head towards . . . the right side towards the window of the bus." After the bus reached T. S.'s stop, the bus driver noticed that T. S. was unable to stand up. The bus driver locked the bus down, helped T. S. to the front of the bus, opened her window, and called out to T. S.'s mother and

4

grandmother. T. S.'s mother carried T. S. off the bus and smelled alcohol coming from her. T. S.'s mother asked her how she got the alcohol, and T. S. told her that she got it from school. T. S.'s mother took her to the hospital where a blood draw revealed that T. S.'s blood alcohol concentration was .106.

The next day, S. H. told K. D. that "some fun stuff happened last night" and that T. S. had "joined in the little fun games." S. H. showed K. D. the video recording of T. S.'s assault, and K. D. observed that "the guy" was trying to get T. S. to perform oral sex and that T. S. was trying to get away. K. D. also observed that the man had a tattoo of dice on his "chest shoulder." The following day, T. S., her mother, and grandmother met with the school principal and an officer, and T. S. told them that she had been raped. A pediatric nurse practitioner examined T. S. and observed a bruise on T. S.'s hymen, which she said was consistent with blunt force penetrating trauma.[4]

T. S. and S. H. recounted the incidents to law enforcement and a forensic interviewer.[5] Law enforcement also interviewed K. D. and she told them about the

---

[4] The August 30, 2016 incident is the basis for the statutory rape (Count 3) charge.

[5] S. H.'s forensic interview was entered into evidence and published to the jury.

video recording and what she observed. Law enforcement retrieved three cell phones from S. H.'s mother and found Marlo's driver's license on one of the phones, but they could not find the video recording of T. S.'s assault. A photo line-up was conducted with T. S., and she identified Marlo as one of the assailants. Law enforcement interviewed Marlo's ex-girlfriend who had lived with Marlo at his home, and she told them that Marlo had a cousin by the name of Iglesias who visited the home regularly. A photo line-up was also conducted with S. H., and she identified Marlo and Iglesias in the line-up. Law enforcement later applied for a search warrant to take photographs of Iglesias' arms and shoulders to determine if he had a tattoo, which was ultimately granted. In executing the search warrant, an investigator observed a tattoo of dice on Iglesias' "chest/shoulder" area.[6]

Iglesias and Marlo were indicted together in a nine-count indictment as follows: Count 1 charged Iglesias and Marlo with rape (OCGA § 16-6-1), Count 2 charged Iglesias and Marlo with cruelty to children in the first degree (OCGA § 16-5-70), Count 3 charged Marlo with statutory rape (OCGA § 16-6-3 (a), Count 4 charged Iglesias and Marlo with enticing a child for indecent purposes (OCGA § 16-6-5),

---

[6] Two photos of the tattoo were entered into evidence and published to the jury.

Count 5 charged Iglesias with sexual battery (OCGA § 16-6-22.1 (b)), Count 6 charged Iglesias and Marlo with furnishing alcohol to a minor (OCGA § 3-3-23), Count 7 charged Iglesias and Marlo with contributing to the delinquency of a minor (OCGA § 16-12-1 (b) (1)), Count 8 charged Iglesias and Marlo with enticing a child for indecent purposes (OCGA § 16-6-5), and Count 9 charged Iglesias and Marlo with statutory rape (OCGA § 16-6-3 (a)). Iglesias filed a motion to suppress three photographs of the dice tattoo,[7] arguing that the photographs, which he alleged showed the dice on his chest, were outside the scope of the search warrant because the warrant only authorized a search of his "arm, shoulder or back." The trial court denied the motion,[8] and following a joint jury trial, Iglesias was acquitted of cruelty to children in the first degree, but he was found guilty of the remaining offenses. Marlo was acquitted of cruelty to children in the first degree and enticing a child for indecent purposes (Count 8), but he was found guilty of the remaining offenses. Iglesias received a life sentence, with the first 30 years to be served in confinement and the

---

[7] The hearing on the motion is not included in the record on appeal.

[8] The record does not include a written order reflecting the trial court's findings of fact and conclusions of law.

7

remainder on probation.[9] Marlo also received a life sentence, with the first 25 years to be served in confinement and the remainder on probation. Iglesias and Marlo subsequently filed motions for a new trial, both of which the trial court denied after a hearing. These appeals followed.

*Case No. A25A1402 (Iglesias Grier)*

1. First, Iglesias argues that the evidence was insufficient to sustain his convictions for enticing a child for indecent purposes and statutory rape. He alleges that he was unaware of S. H.'s true age as required to support his convictions for enticing a child for indecent purposes and that S. H.'s testimony as to the initial August 26 incident was not corroborated to sustain his conviction for statutory rape. We disagree and conclude that the evidence was sufficient to sustain his convictions.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies,

---

[9] The trial court initially imposed a 30-year sentence for the sexual battery (Count 5) offense to be served concurrently with the life (to serve 30 years) sentence for rape (Count 1), but the trial court later amended Iglesias' sentence for the sexual battery offense to 12 months concurrent with the rape sentence.

and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

(Citation omitted.) *Johnson v. State*, 367 Ga. App. 344 (886 SE2d 5) (2023).

### (a) Enticing A Child For Indecent Purposes

"Under OCGA § 16-6-5 (a) [(2006)],[10] a person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." (Citation and punctuation omitted.) *Allison v. State*, 356 Ga. App. 256, 263 (2) (b) (846 SE2d 222) (2020). Thus, "[t]o establish a violation of this statute, the State must prove a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation. (Citation and punctuation omitted.) Id. But "a conviction under OCGA § 16-6-5 need not be based upon evidence that an act of indecency or child molestation was accomplished or even

---

[10] See *Bryson v. State*, 350 Ga. App. 206, 207 (2) (828 SE2d 450) (2019) ("A crime is to be construed and punished according to the provisions of the law existing at the time of its commission.") (citation omitted).

attempted[.]" *Lasseter v. State*, 197 Ga. App. 498, 499 (1) (399 SE2d 85) (1990). Rather, the evidence need only show "that an act of indecency or child molestation was the intended motivation for the enticement." (Emphasis omitted.) Id. at 499-500 (1). And we have been clear that

> [t]he intent with which an act is done is peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this.

(Citation omitted.) *Bryan v. State*, 371 Ga. App. 769, 776 (1) (b) (903 SE2d 160) (2024). Moreover, knowledge of the child's age is not an essential element of the crime because the plain language of the statute does not require that the defendant *knowingly* solicit or entice a child under the age of 16 to sustain a conviction. *Allen v. State*, 242 Ga. App. 367, 368 (1) n.1 (533 SE2d 401) (2000); compare *Brown v. State*, 233 Ga. App. 195, 197 (2) (504 SE2d 35) (1998) (contributing to the delinquency of a minor offense requires proof that the accused know the age of the minor because knowledge is expressly stated in the statute and requires proof that the defendant "knowingly" encouraged or caused a minor to commit a delinquent act). See also

*Flakes v. State*, 365 Ga. App. 97, 99 (a) (877 SE2d 635) (2022) ("[O]ur rules of statutory interpretation dictate that we cannot simply add a knowledge element to the statute.").

Here, Count 4 and Count 8 alleged that Iglesias, "individually and as a party to the concerned in the commission of a crime," committed the offense of enticing a child for indecent purposes in that he "did unlawfully solicit and take [S. H.], a child under the age of sixteen years, to 4969 Windsor Downs Lane for the purpose of indecent acts[.]" The evidence at trial showed that on August 26, 2016, Iglesias picked up S. H. as she walked to school, took her to Marlo's home, and had vaginal intercourse with her. Iglesias and S. H. made plans to meet again a few days later, and he asked her to "bring a friend." Days later on August 30, 2016, Iglesias picked up S. H. and T. S., took them to Marlo's house, bought them liquor, played a pornographic video on the television, and performed oral sex on S. H. Moreover, the record is clear that S. H. was only 14 years old at the time of the offenses. Although Iglesias extensively argues that the State failed to prove that he knew S. H. was under the age of 16, as stated above, knowledge of the victim's age is not an essential element for this offense. *Allen*, supra, 242 Ga. App. at 368 (1) n.1 And from all of the evidence, we

conclude that a jury could reasonably infer that an act of indecency was the intended motivation for the enticement for both counts, and therefore the evidence was sufficient to sustain his convictions for enticing a child for indecent purposes. See *Dockery v. State*, 309 Ga. App. 584, 586-587 (1) (711 SE2d 100) (2011) (evidence was sufficient to sustain the defendant's conviction as a party to the crime of enticing a child for indecent purposes where the co-defendant brought the victim to his home and the defendant gave the victim thong underwear, alcoholic beverages, and pornographic materials, and the co-defendant pulled down the victim's underwear and tried to kiss her).

*(b) Statutory Rape*

Under OCGA § 16-6-3 (a), "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." Thus, to sustain a conviction for statutory rape, "the State must present some evidence to corroborate the victim's testimony that the defendant committed statutory rape." *Quantanilla-Solis v. State*, 367 Ga.

12

App. 397, 399 (1) (885 SE2d 323) (2023). The Supreme Court of Georgia has explained that corroborating evidence is

> evidence that differs from but strengthens or confirms what other evidence shows (esp. that which needs support). The value of a prior consistent statement is that it does not differ from a subsequent statement. The consistency of a prior statement of the statutory rape victim makes a subsequent statement that contains the same details more believable. On the other hand, corroborating evidence earns its value because it is independent from the victim's statement. It is evidence from an independent source that supports the conclusion that the defendant committed the statutory rape of the victim.

(Citation, punctuation, and emphasis omitted.) *Atkins v. State*, 304 Ga. 240, 244 (2) (818 SE2d 567) (2018). Under this construct, it is true, as Iglesias points out, that "a victim's prior consistent statement cannot provide the required corroborating evidence for [a defendant]'s conviction for statutory rape[.]" Id. at 245 (2). Still, it is well settled that "corroborating evidence may be slight." (Citation omitted.) *Quantanilla-Solis*, supra, 367 Ga. App. at 399 (1). Indeed,

> it is not necessary that the child be corroborated as to every essential element of the crime, or that it establish the defendant's guilt. Moreover, the quantum of corroboration needed is not that which is in itself sufficient to convict the accused, but only that amount of independent

13

evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury.

(Citation and punctuation omitted.) *Sanchez v. State*, 316 Ga. App. 40, 41 (1) (728 SE2d 718) (2012). And as the Supreme Court of Georgia noted in *Atkins*, "[e]vidence of an accused's conduct before *and after* the crime was committed may give rise to an inference that he participated in the crime." (Emphasis supplied.) *Atkins*, supra, 304 Ga. at 244 (2) n.1. Moreover, "physical findings corroborating the victim's testimony are not necessary to sustain a conviction of statutory rape." (Citation omitted.) *Garner v. State*, 346 Ga. App. 351, 355 (1) (816 SE2d 368) (2018).

Here, Count 9 of the indictment alleged that on August 26, 2016, Iglesias, individually and as a party concerned in the commission of a crime, committed statutory rape in that he "did engage in sexual intercourse with [S. H.], a person under 16 years of age and not being the spouse of the accused[.]" S. H. testified that she had sex with Iglesias at Marlo's home, and she recounted the incident to T. S., law enforcement, and a forensic interviewer. Although S. H.'s prior consistent statements and outcries cannot serve as corroborating evidence under *Atkins*, we nevertheless conclude that S. H.'s testimony concerning the August 26 incident was sufficiently

corroborated by the similarity in Iglesias' conduct during the August 30 incident. Specifically, S. H. testified that on August 26, Iglesias picked her up in a car, took her to Marlo's house, and had sex with her in the two upstairs bedrooms. S. H. further testified that on August 30, Iglesias again picked her up, took her to Marlo's house, and engaged in sexual activity with her in one of the same bedrooms as the first incident. Therefore, the similarity in which Iglesias committed the offenses for both incidents provided the requisite corroboration to support S. H.'s testimony, and thus Iglesias' insufficiency of the evidence claim fails. See *Bradford v. State*, 262 Ga. 512, 513 (421 SE2d 523) (1992) (accomplice's testimony concerning the defendant's participation in the crimes was sufficiently corroborated because of the similarity in which the crimes were committed); see also *Atkins*, supra, 304 Ga. at 244 (2) n.1 (stating that the Court's construction of corroborating evidence for statutory rape offenses was "in line with criminal law regarding incriminating statements made by an accomplice under both the old and the new Evidence Code.").[11]

---

[11] Although the Supreme Court of Georgia ultimately reversed Atkins' statutory rape conviction because of the lack of corroborating evidence, *Atkins*, supra, 304 Ga. at 244-245 (2), that decision does not require us to reach a different conclusion here because the *Atkins* Court did not address whether the similarity in which a defendant commits multiple instances of statutory rape can serve as the necessary corroborating evidence for the victim's testimony. See *Cook v. State*, 313 Ga. 471, 478 (2) (a) (870

2. Next, Iglesias argues that the trial court erred by denying his motion to suppress photographs of his chest, State Exhibits 22, 23, and 23a,[12] because the search warrant only authorized law enforcement to search his "arm[s], shoulder, or back." We conclude that Iglesias has failed to show reversible error in the denial of his motion to suppress.

> The manner in which we review a ruling on a motion to suppress is as follows: First when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. . .

---

SE2d 758) (2022) ("Decisions of this Court and of the Court of Appeals do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation and punctuation omitted).

[12] Only Exhibits 22 and 23a were entered into evidence at trial. Thus, to the extent that Iglesias challenges the denial of his motion to suppress Exhibit 23, which was not entered into evidence at trial, that claim is moot. See *Barnes v. State*, 269 Ga. 345, 348 (3) (496 SE2d 674) (1998) (issue regarding the denial of a motion to suppress was moot where the evidence was not introduced into evidence at trial).

. However, the trial court is not required to make express findings of fact after a hearing on a motion to suppress, and where the trial court has not done so, we nevertheless construe the evidence most favorably to uphold the trial court's judgment. In so construing the evidence, this Court can consider the pretrial testimony adduced at the suppression hearing, as well as the trial transcript.

(Citations and punctuation omitted.) *Jones v. State*, 314 Ga. 605, 609 (2) (878 SE2d 505) (2022). Moreover, "the reviewing court may also consider facts that definitely can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from audio[] or video[] recordings." (Citation and punctuation omitted.) *Dawson v. State*, 308 Ga. 613, 619 (3) (842 SE2d 875) (2020).

It is well settled that "[a] search warrant may issue only upon facts sufficient to show probable cause that a crime is being committed or has been committed." (Citation and punctuation omitted.) *State v. de la Paz*, 370 Ga. App. 853, 856 (1) (899 SE2d 447) (2024). See also OCGA § 17-5-21 (a) (5) (permitting judicial officers to authorize search warrants for the seizure of "[a]ny instruments, articles or things, any information or data, and anything that is tangible or intangible, corporeal or

incorporeal, visible or invisible evidence of the commission of the crime for which probable cause is shown[.]"). But

> [a] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible. Evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation. A lawful search is limited to that which is described in the warrant.

(Citation omitted.) *State v. Rogers*, 319 Ga. App. 834, 836 (2) (738 SE2d 667) (2013). Thus, "[a]s a general rule, an officer may not seize anything not specified in the warrant." (Citation omitted.) *de la Paz*, supra, 370 Ga. App. at 859 (2). One exception to this rule, however, is that "under the plain view doctrine, a police officer may seize evidence outside the scope of a search warrant if the evidence is in plain view, the officer has not violated the Fourth Amendment in arriving at the place from which he sees the evidence, and the incriminating nature of the evidence is immediately apparent." Id. "The requirement that the incriminating nature of the object must be immediately apparent is understood to mean that the officer must have probable cause

to believe that the item in question is evidence of a crime or is contraband." (Citation and punctuation omitted.) *Kennedy v. State*, 371 Ga. App. 163, 169-170 (2) (b) (899 SE2d 803) (2024). And probable cause in this sense

> is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.

(Citation omitted.) Id. at 170 (2) (b).

Here, the affidavit and application for search warrant show that during the investigation of the crimes, law enforcement learned that a witness saw a video recording of T. S.'s sexual assault and observed that the perpetrator had a "dice tattoo" on his shoulder or arm but was unsure whether it was on the right or left arm. The trial court granted the application, authorizing law enforcement to "enter, search and seize . . . the person, premises, or property," which was described as "[a] tattoo located on either arm, shoulder or back of Iglesias Grier." An investigator testified that in executing the search warrant, he asked Iglesias to remove his shirt, and that he observed and photographed a "dice tattoo" on Iglesias' "left" "chest/shoulder

19

area." The photographs show the dice tattoo on Iglesias' left chest, slightly above his nipple.

We conclude that the trial court did not err by denying Iglesias' motion to suppress the photographs of his tattoo. There is no dispute that the investigator was lawfully at the DeKalb County Jail when he executed the search warrant.[13] In executing the warrant, the investigator asked Iglesias to remove his shirt so that he could take photographs, and importantly, Iglesias does not argue on appeal that the investigator's request for him to remove his shirt was improper. Moreover, the investigator testified that he reviewed the search warrant and was aware that a witness stated that Iglesias had a dice tattoo on his body. The investigator further testified that he was specifically looking for a dice tattoo on Iglesias' body in connection with the crimes, which therefore made the incriminating nature of the tattoo immediately apparent when Iglesias removed his shirt. Because the investigator was lawfully at the jail to execute the search warrant, coupled with his knowledge that Iglesias had a dice tattoo on his body which made the incriminating nature of the tattoo immediately apparent when Iglesias removed his shirt, the photographs of the tattoo were

_____

[13] Iglesias was already in custody at the time the search warrant was executed.

admissible under the plain view doctrine. See *Kennedy*, supra, 371 Ga. App. at 170-171 (2) (b) (firearms that were seized during the execution of a search warrant for marijuana and other drug distribution items were admissible under the plain view doctrine because law enforcement was aware that the defendant was a convicted felon at the time of the search, which made the incriminating nature of the firearms immediately apparent). Therefore, the trial court properly denied the motion to suppress.

Furthermore, even if the trial court had erred by denying the motion to suppress, any error in the admission of the photographs was harmless. "The test for determining non-constitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In conducting harmless-error analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." (Citation and punctuation omitted.) *Watkins v. State*, 320 Ga. 862, 870 (2) (c) (912 SE2d 574) (2025). In this case, the evidence regarding the dice tattoo was not the only evidence that revealed Iglesias' identity as the perpetrator to connect him with the crimes. The record shows that S. H. identified Iglesias in a photo line-up and that T. S. identified Iglesias at trial. Because there was other

evidence to establish Iglesias as the perpetrator of the crimes, even if the trial had erred by denying the motion to suppress, any error in that ruling would be harmless beyond a reasonable doubt. See *Campbell v. State*, 337 Ga. App. 7, 11-12 (1) (785 SE2d 649) (2016) (any error in the trial court's denial of the defendant's motion to suppress evidence obtained from his cell phone that established his identity as the perpetrator was harmless beyond a reasonable doubt where the State presented other evidence that connected the defendant to the crime).

3. In two related claims, Iglesias argues that the trial court violated the best evidence rule by allowing K. D. to testify that she observed Iglesias "coercing" T. S. into performing oral sex in the video recording without requiring the State to produce the video and that his trial counsel rendered ineffective assistance by failing to object to K. D.'s testimony. Neither of these claims, however, have any merit.

(a) Although Iglesias did not object to K. D.'s testimony during trial, the current Evidence Code "permits a court to take notice of plain errors affecting substantial rights although such errors were not brought to the attention of the trial court." (Citation omitted.) *Ceballos v. State*, 345 Ga. App. 714, 719 (2) (a) (815 SE2d 89) (2018). To establish plain error,

22

[t]here first must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Id.

The purpose of the best evidence rule is to "prevent inaccuracy and fraud when attempting to prove the contents" of a writing, recording, or photograph. (Citation omitted.) *Seals v. State*, 350 Ga. App. 121, 126 (2) (828 SE2d 117) (2019). The rule is codified in OCGA § 24-10-1002 and states that "[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required." But the requirement to produce the original writing, recording, or photograph is not required if:

(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;

(2) No original can be obtained by any available judicial process or procedure;

(3) At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(4) The writing, recording, or photograph is not closely related to a controlling issue.

OCGA § 24-10-1004 (1) - (4).

Here, K. D. testified that she observed the video recording of T. S.'s assault on S. H.'s cell phone. An investigator retrieved three cell phones from S. H.'s mother, searched for the video through an extraction process, but ultimately did not find any videos of the incident. And notably, Iglesias does not allege that the State intentionally lost or destroyed the video recording in bad faith. In light of this record, Iglesias cannot satisfy the first and second prongs of the plain error test because he

> is unable to show that the trial court erred by admitting this evidence under the [current] Evidence Code, much less that a legal error was clear or obvious, rather than subject to reasonable dispute. Indeed, as previously noted, under OCGA § 24-10-1004 (1), an original recording or photograph is *not* required at trial and secondary evidence of its

contents *is admissible* if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

(Citation and punctuation omitted; emphasis within the original). *Ceballos*, supra, 345 Ga. App. at 719 (2) (a). And although Iglesias argues that another student had the video of the assault and law enforcement failed to retrieve the video from that student, this argument is unavailing because there is nothing in the trial transcript to show that the other student did, in fact, have the video. Instead, the investigator only testified that the other student "*might*" have had the video. "As a result, the testimony regarding the contents of the lost or destroyed [video recording] was admissible under the plain language of OCGA § 24-10-1004 (1)." (Punctuation omitted.) Id. at 720 (2) (a) (trial court did not violate the best evidence rule by allowing an officer to testify about a notebook which was not produced at trial because the officer testified that he lost the notebook, and there was no evidence that the State intentionally destroyed the notebook); see also *Render v. State*, 320 Ga. 890, 900 (3) (912 SE2d 679) (2025) (trial court did not violate best evidence rule where although there was "tension" between the officers' testimony as to whether they ever retrieved the video despite making an

effort to do so, the trial court was still authorized to admit the officers' testimony under OCGA § 24-10-1004 (1)).

But even if the trial court violated the best evidence rule by allowing K. D. to testify about what she observed on the video recording, Iglesias still cannot satisfy the third prong of the plain error test, which requires a showing that the error affected the outcome of the proceedings. As recounted above, T. S. testified that Iglesias touched her chest, kissed her neck, pulled down her underwear, and tried to "force" his penis inside her vagina. Although T. S. told Iglesias to "stop," he still placed his penis inside her vagina. T. S. also made outcry statements to her mother, grandmother, law enforcement, and a forensic interviewer. Moreover, a pediatric nurse who examined T. S. testified that a bruise on T. S.'s hymen was consistent with "penis to vaginal penetration with force." Therefore, contrary to Iglesias' claim, K. D.'s testimony was not the only evidence of force to support the rape charge, and in light of the overwhelming evidence of Iglesias' guilt, he cannot establish that the error, if any, affected the outcome of the proceedings. See *Render*, supra, 320 Ga. at 901 (4) (defendant could not establish the prejudice prong of the plain error test because even if the trial court violated the best evidence rule, the challenged testimony was

cumulative of other evidence presented at trial); *Patch v. State*, 337 Ga. App. 233, 242-243 (2) (786 SE2d 882) (2016) (defendant could not show that the trial court's alleged error in permitting an officer to testify about certain photographs affected the outcome of the proceedings to constitute plain error in light of the overwhelming evidence of the defendant's guilt).

(b) Iglesias' claim that trial counsel rendered ineffective assistance by failing to object to K. D.'s testimony on best evidence grounds also fails.

To prevail on an ineffective assistance of counsel claim, a defendant generally "must show both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance." (Citation omitted.) *Ferguson v. State*, 354 Ga. App. 867, 868 (2) (842 SE2d 77) (2020). And "[i]f the defendant fails to satisfy either prong . . . , this Court is not required to examine the other." (Citation omitted.) *Mallery v. State*, 342 Ga. App. 742, 744 (805 SE2d 257) (2017). Moreover, it is well settled that the prejudice prong of an ineffective assistance of counsel claim is equated with the prejudice prong of the plain error test. *Jackson v. State*, 306 Ga. 69, 84 (4) (b) (829 SE2d 142) (2019). Therefore, if a defendant cannot establish prejudice for a plain error claim, he likewise cannot establish prejudice for

an ineffective assistance of counsel claim on the same issue. See id. at 85 (4) (b) (defendant could not show prejudice from trial counsel's alleged failure to request an accomplice-corroboration instruction because the defendant could not establish prejudice for his plain error claim on the same issue).

As stated above, even if the trial court violated the best evidence rule, Iglesias still could not show that the alleged error affected the outcome of the proceedings for the plain error test. And because Iglesias cannot show prejudice under the plain error test, he likewise cannot establish prejudice for his ineffective assistance of counsel claim on this issue. *Jackson*, supra, 306 Ga. at 84-85 (4) (b).

4. Iglesias further argues in two related claims that the trial court committed plain error by failing to instruct the jury on a mistake of fact defense for the enticing a child for indecent purposes offenses because he raised the possibility that he was unaware that S. H. and T. S. were minors, and his trial counsel rendered ineffective assistance by failing to request the instruction. These claims are also meritless.

Because Iglesias did not request that the jury be instructed on mistake of fact or object to the trial court's failure to provide such a charge, we review this claim for plain error only. See *Chambers v. State*, 361 Ga. App. 139, 144 (2) (863 SE2d 387)

(2021) (reviewing the defendant's claim about the trial court's failure to instruct the jury on mistake of fact for plain error because he failed to object and request the charge at trial).

"Mistake of fact represents an affirmative defense, under which a person shall not be found guilty of a crime if the act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission." (Citation omitted.) *Ogle v. State*, 349 Ga. App. 872, 874 (827 SE2d 61) (2019); see also OCGA § 16-3-5. We have long held, however, that "[m]istake of fact is a defense to a crime to the extent that the ignorance of some fact negates the existence of the mental state required to establish a material element of the crime." (Citation omitted.) *Schultz v. State*, 267 Ga. App. 240, 242 (2) (599 SE2d 247) (2004). But where knowledge of the victim's age is not an element of a crime, it is not error for a trial court to refuse to charge the jury on mistake of fact. Id. See also *Neal v. State*, 264 Ga. App. 311, 315 (6) (590 SE2d 168) (2003) (defendant not entitled to mistake of fact instruction where knowledge of the victim's age was not an element of the offense); *Tant v. State*, 158 Ga. App. 624, 624-625 (2) (281 SE2d 357) (1981) (defendant was not entitled to a mistake of fact instruction because "the defendant's knowledge of the age

29

of the female is not an essential element of the crime of statutory rape and therefore it is no defense that the accused reasonably believed that the [victim] was of the age of consent") (citation omitted).

Here, Iglesias cannot establish that the trial court committed any error by failing to charge the jury on mistake of fact. As stated above in Division 1 (a), knowledge of the victim's age is not an element of the offense of enticing a child for indecent purposes. Therefore Iglesias was not entitled to have the jury instructed on mistake of fact. See *Chambers*, supra, 361 Ga. App. at 145 (2) (defendant could not show that the trial court committed plain error by failing to charge the jury on mistake of fact where the instruction was not warranted). Moreover, because mistake of fact was not available as a defense, trial counsel was not deficient in failing to request the instruction. See *Sims v. State*, 321 Ga. 627, 635 (4) (a) (916 SE2d 406) (2025) ("[T]rial counsel does not perform deficiently by failing to make a meritless objection[.]"); *Jackson v. State*, 318 Ga. 393, 399 (1) (b) (897 SE2d 785) (2024) (trial counsel not deficient for failing to request instruction on defense of habitation because defense of habitation was not available as a defense).

*Case No. A25A1403 (Marlo Grier)*

30

5. In his appeal, Marlo first argues that the evidence was insufficient to sustain his convictions for rape, statutory rape, and enticing a child for indecent purposes. He argues that the evidence was insufficient for his rape conviction due to T. S.'s voluntary intoxication and that the evidence was insufficient for his statutory rape convictions because the State failed to prove that he was not married to S. H. at the time of the offenses. He further argues that the State failed to show that he "solicited" or "enticed" S. H. to support his enticing a child for indecent purposes convictions. We disagree and conclude that the evidence was sufficient to sustain his convictions.

*(a) Rape*

OCGA § 16-6-1 (a) (1) - (2) (2011) provides that "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[,] or [a] female who is less than [10] years of age." Therefore, as reflected by the plain language of the statute, "[a] rape conviction requires proof of force, regardless of the victim's age, unless the victim is under age 10." *Brown v. State*, 319 Ga. App. 680, 683 (2) (738 SE2d 132) (2013). "The terms 'forcibly' and 'against her will' are two separate elements of proving rape. The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical

bodily harm, or mental coercion, such as intimidation[.]" (Citation and punctuation omitted.) *Kim v. State*, 366 Ga. App. 516, 517 (1) (a) (883 SE2d 536) (2023). As to the element of force, we have been clear that

> when the State has proven beyond a reasonable doubt that the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant. Thus, sexual intercourse with a woman whose will is temporarily lost from intoxication or unconsciousness arising from the use of drugs or other cause or sleep is rape. [And] [a]lthough a majority of states do not criminalize conduct when a victim has become voluntarily intoxicated by drugs or alcohol, Georgia is *not* such a state. Indeed, under our well-established case law, when a victim is intoxicated, drugged, or mentally incompetent and her will is temporarily lost from intoxication or unconsciousness arising from the use of drugs or other cause, she is physically or mentally unable to give consent to the act of sexual intercourse.

(Citations and punctuation omitted; emphasis within the original.) *Johnson v. State*, 351 Ga. App. 690, 693-694 (832 SE2d 676) (2019).

Moreover, under OCGA § 16-2-20 (a), (b) (3) - (4), a person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires,

32

counsels, or procures another to commit the crime is a party to the crime and may be charged with and convicted of the crime.

> While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.

(Citation omitted.) *Naylor v. State*, 300 Ga. App. 401, 402 (685 SE2d 383) (2009).

Here, Count 1 alleged that on August 30, 2016, Marlo, "individually and as a party concerned in the commission of a crime," "did have carnal knowledge of [T. S.] a female, forcibly and against her will." The evidence showed that prior to the incident, Iglesias told S. H. to "bring a friend" to their next encounter, and S. H. testified that she thought the "friend" was for Marlo since she was already intimate with Iglesias. After S. H. and T. S. arrived at the house on August 30, Iglesias and

33

Marlo purchased alcoholic beverages, and T. S. consumed "peach vodka." T. S., S. H., Iglesias, and Marlo went upstairs to Marlo's bedroom, and on their way, T. S. "tumbled up the stairs" and T. S. noticed that she "felt a little different" and "could barely . . . walk normal." After they reached the bedroom, Marlo "jok[ed] around sexually" with them and encouraged them to watch a pornographic video. S. H. and T. S. laid together in bed while Iglesias forcibly penetrated T. S., at which point Marlo, who was also in the bed and having sexual intercourse with S. H., encouraged S. H. to "touch" T. S. while T. S. was being assaulted by Iglesias. We conclude that this evidence was sufficient for a jury to conclude that Marlo was a party to the crime of rape beyond a reasonable doubt. See *Cole v. State*, 279 Ga. App. 219, 221 (1) (630 SE2d 817) (2006) (evidence was sufficient to sustain the defendant's conviction for rape as a party to the crime, where the defendant gave alcohol to the victim, was present as the co-defendant got on top of the victim and placed his penis inside her vagina, and raised no objection to the co-defendant's actions).

Although Marlo extensively argues that T. S.'s voluntary intoxication should negate the element of force, this argument is futile for two reasons. First, as stated above, Georgia is *not* among the states that do not criminalize conduct based on a

34

victim's voluntary intoxication. *Johnson*, supra, 351 Ga. App. at 693-694.[14] Secondly, aside from T. S.'s intoxication, there was still other evidence to show that Iglesias had sexual intercourse with T. S. forcibly and against her will. T. S. testified that she repeatedly told Iglesias to "stop" and that she tried to get up and leave, but Iglesias got on top of her and penetrated her. See *Kim*, supra, 366 Ga. App. at 517 (1) (a) (evidence was sufficient to show force to sustain the defendant's rape conviction where the victim told the defendant "no" and "stop," and the victim testified that she could not leave because the defendant was on top of her). Accordingly, Marlo's insufficiency of the evidence claim for this count fails.

### (b) Statutory Rape

(i) *Count 3.* Count 3 alleged that on August 30, 2016, Marlo committed statutory rape in that he "did engage in sexual intercourse with [S. H.], a person under 16 years of age and not being the spouse of the accused." As recounted above, T. S. testified that S. H. took her clothes off after she got into bed with her, Marlo, and Iglesias, and S. H. said that she had sex with Marlo during this encounter. This evidence was sufficient to establish the crime of statutory rape. See *Garner v. State*,

---

[14] To the extent that Marlo urges this Court to revise this long-standing legal principle, we decline to do so.

346 Ga. App. 351, 356 (1) (816 SE2d 368) (2018) (victim's testimony was sufficiently corroborated to sustain the defendant's conviction for statutory rape where a witness testified that the defendant locked him in a separate room from the defendant and the victim, and the defendant overheard the victim asking the defendant for her bra which *"suggest[ed] that she had been undressed."*).

Additionally, contrary to Marlo's claim, evidence was presented for a jury to find that he and S. H. were not married at the time of the offense.

> A conviction can rest on circumstantial evidence alone if that evidence excludes every other reasonable hypothesis save that of the guilt of the accused. The key word is 'reasonable.' The evidence need not exclude every conceivable inference or hypothesis. And both the question whether an alternative hypothesis is reasonable and the ultimate question whether the circumstantial evidence excludes such hypotheses are for the jury to answer. We will not disturb a jury's finding on those questions unless it is insupportable as a matter of law.

(Citations, punctuation, and emphasis omitted.) *Drake v. State*, 363 Ga. App. 653, 655 (1) (872 SE2d 306) (2022). Here, during S. H.'s forensic interview, when asked for Marlo's name, she replied, "I don't know," and she also testified that she did not know Marlo's full name and that she learned his name from a subpoena. More

36

importantly, during Marlo's interview with the police after the crimes,[15] he told law enforcement that he was unfamiliar with S. H. and T. S., and he could only generally describe them as a "light-skinned female" and a "dark-skinned female." We conclude from this evidence that a rational jury could have found that Marlo and S. H. were not married at the time of the offenses, and that Marlo was guilty of statutory rape beyond a reasonable doubt.

(ii) *Count 9*. Count 9 alleged that Marlo, individually and as a party concerned in the commission of a crime, committed statutory rape on August 26, 2016, in that he "did engage in sexual intercourse with [S. H.], a person under 16 years of age and not being the spouse of the accused."[16] As recounted above, S. H. testified that after she had sex with Iglesias, she went into Marlo's bedroom and had sex with Marlo and Iglesias. Unlike Iglesias, Marlo does not challenge the sufficiency of the corroborating evidence, but instead primarily argues that the State failed to present evidence that he was not married to S. H. But for the reasons stated above in Division 5 (b) (i), a

---

[15] The recorded interview was entered into evidence and played for the jury during trial.

[16] Again, Count 9, pertained to the *first* incident, in which T. S. was not present or involved, and the State did not present any other evidence independent from S. H.'s testimony about this sexual encounter.

rational jury could have found that Marlo was not married to S. H. And for the reasons stated above in Division 1 (b), we conclude that the evidence was sufficient to sustain his conviction for statutory rape.

### (c) Enticing a Child for Indecent Purposes

Count 4 alleged that on August 30, 2016, Marlo, individually and as a party concerned in the commission of crime, "did unlawfully solicit and take [S. H.], a child under the age of [16] years, to 4969 Windsor Downs Lane for the purpose of indecent acts[.]" Again, the evidence showed that Iglesias picked up S. H. and T. S. and took them to Marlo's house, and Iglesias and Marlo bought liquor and played a pornographic video on the television. S. H. testified that prior to that day, Iglesias asked her to "bring a friend" to their next gathering, and she thought "the friend" was for Marlo because she had already been "intimate" with Iglesias. The evidence also showed that Marlo had sex with S. H. during this incident. This evidence was sufficient for a rational jury to conclude that Marlo was, at the very least, a party to the crime of enticing a child for indecent purposes. *Dockery*, supra, 309 Ga. App. at 586-587 (1).

6. Next, Marlo argues that the trial court erred by allowing K. D. to testify about what she observed in the video recording on S. H.'s cell phone because the State did not lay a proper foundation for the video. This claim is not meritorious.

Preliminarily, although Marlo contends that the standard of review for this issue is abuse of discretion, it does not appear that he objected to K. D.'s testimony on the grounds of lack of foundation, and his appellate brief does not include any citation to the record showing that he made this specific objection at trial.[17] Therefore, we will review this claim for plain error only. See *Ceballos*, supra, 345 Ga. App. at 719 (2) (a).

Turning to the merits of Marlo's claim, it is true that OCGA § 24-9-923 (c) provides:

---

[17] Although Marlo's trial counsel stated at a pre-trial hearing that she filed a motion objecting to K. D.'s testimony, that motion is not included in the record on appeal. Moreover, at the pre-trial hearing, counsel only generally acknowledged that a motion was filed and that the trial court previously ruled that K. D. would be permitted to testify about what she saw on the recording. Thus, there is nothing in the record to show that trial counsel objected specifically on the grounds of lack of foundation. See *Thomas v. State*, 354 Ga. App. 815, 818 (1) (841 SE2d 458) (2020) ("To preserve an objection on a specific ground for ordinary appellate review, objection on that ground must be raised prior to admission of the challenged evidence at trial."). And notably, at the motion for new trial hearing, trial counsel testified that she did not specifically object to the video in her motion in limine but that she objected to K. D.'s testimony on hearsay grounds.

Subject to any other valid objection, photographs, motion pictures, video recordings, and audio recordings produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that, prior to the admission of such evidence, the date and time of such photograph, motion picture, or video recording shall be contained on such evidence, and such date and time shall be shown to have been made contemporaneously with the events depicted in such photograph, motion picture, or video recording.

But by its express terms, this provision applies to the *admission of pictures, video recordings, and audio recordings*. See also OCGA § 24-9-923 (d) ("This Code section shall not be the exclusive method of *introduction into evidence of photographs, motion pictures, video recordings, and audio recordings* but shall be supplementary to any other law and lawful methods existing in this state.") (emphasis supplied). Here, however, the State was not attempting to introduce the video recording of T. S.'s assault. Indeed, the State could not introduce the recording because law enforcement could not find the recording. Instead, the State sought to introduce evidence of what K. D. personally observed in the recording. Such testimony therefore fell outside of the

40

ambit of OCGA § 24-9-923 (c) and was instead governed by OCGA § 24-10-1004, which pertains to other evidence of a writing, recording, or photograph. That provision does not contain any language requiring a party to establish a foundation of the recording, writing, or photograph prior to admitting other evidence regarding its contents, and we cannot add any such requirement to the statute. See *Asekere v. State*, 373 Ga. App. 633, 636 (908 SE2d 317) (2024) ("[I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant.") (citation omitted); *Hill v. Kemp*, 366 Ga. App. 19, 25 (1) (880 SE2d 590) (2022) ("The separation of powers prohibits us from adding a line to a law enacted by the legislature. Under the doctrine of separation of powers, statutory construction belongs to the courts, legislation to the legislature.") (citations and punctuation omitted). And for the reasons stated above in Division 3 (a), Marlo cannot demonstrate that the trial court committed any error, much less plain error, by permitting K. D. to testify about what she observed in the video recording of the assault.

7. Marlo further argues that the trial court erred by charging the jury on conspiracy because the State failed to present any evidence of a conspiracy to commit

the crimes. Marlo, however, cannot establish that the trial committed plain error in this regard.

Preliminarily,

[a]n objection voiced at the charge conference does not preserve for ordinary appellate review a party's objection to the charge as subsequently given. Rather, to preserve an objection to a jury charge for ordinary appellate review, the defendant must restate his objection after the court gives its instructions and before the jury retires to deliberate. A party's failure to object to the instruction as given, or to the omission of an instruction, precludes appellate review of the instruction unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.

(Citations, punctuation, and emphasis omitted.) *Jivens v. State*, 317 Ga. 859, 861 (1) (896 SE2d 516) (2023). Here, although Marlo objected to the conspiracy instruction during the charge conference, he did not restate his objection after the court charged the jury and before the jury retired. Therefore, we will review this claim for plain error only. Id.

A jury charge on conspiracy is warranted where there is "evidence of a common design as well as an express agreement to commit a crime." (Citation omitted.) *Boyd v. State*, 306 Ga. 204, 212-213 (3) (830 SE2d 160) (2019). Where "there is no evidence

of an express agreement, an inference that two or more people tacitly came to a mutual understanding to commit a crime can be drawn from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Citation omitted.) Id. at 213 (3). "If slight evidence tends to show a conspiracy, then it is not error to charge the jury on conspiracy." (Citation and punctuation omitted.) Id. at 212 (3). Moreover, "the State need not . . . argue a theory of . . . conspiracy for a crime to be proven in that manner." *Bowman v. State*, 317 Ga. 457, 460-461 (2) (a) (893 SE2d 735) (2023).

We conclude that Marlo cannot show that the trial court committed any error in charging the jury on conspiracy. As recounted above in Division 5 (a), there was more than slight evidence to permit a jury to infer that Marlo and Iglesias tacitly came to a mutual understanding to commit the crimes.[18] Consequently, Marlo cannot show

---

[18] To the extent that Marlo argues that a jury instruction on conspiracy was error because he left before Iglesias finished sexually assaulting T. S., this argument has no merit. A defendant may be found guilty of a crime under a conspiracy theory even if he or she is not present when the crime occurs. *Johnson v. State*, 299 Ga. App. 706, 709 (1) (a) (683 SE2d 659) (2009). And to the extent Marlo argues that a conspiracy instruction was improper because he abandoned any efforts to commit the crimes, this claim is also meritless. The mere fact that Marlo left the bedroom before Iglesias finished sexually assaulting T. S. is insufficient to show that he abandoned his efforts to commit any crimes. See *Satterfield v. State*, 309 Ga. 843, 847 (2) (a) (849 SE2d 165) (2020) (the fact that the defendant left the victim's home after he entered

43

that the trial court committed any error in instructing the jury on conspiracy. See

*Bowman v. State*, 317 Ga. 457, 461-462 (2) (a) (893 SE2d 735) (2023) (trial court did

not err by instructing the jury on conspiracy and party-to-the-crime, where the same

evidence that supported a party-to-the-crime charge also supported a conspiracy

charge).

8. Marlo also argues that his trial counsel rendered ineffective assistance by

failing to object (a) on foundation grounds to K. D.'s testimony about what she

observed on the video recording and (b) to T. S.'s testimony that she "got raped."

We conclude that Marlo's ineffective assistance of counsel claims fail.

(a) First, as to Marlo's claim that his trial counsel rendered ineffective

assistance by failing to object on foundation grounds to K. D.'s testimony,[19] as stated

above in Division 6, there is no language in OCGA § 24-10-1004 that requires a party

to lay a foundation before a witness can testify about the contents of a writing,

---

the house was insufficient to show that he abandoned his efforts to commit burglary).

[19] Although the State contends that Marlo's trial counsel made a pre-trial objection to K. D.'s testimony, the record is unclear as to the nature of that objection. The pre-trial hearing only acknowledges that a motion was filed regarding K. D.'s testimony and that the trial court ruled that K. D. would be permitted to testify only about what she saw on the recording. But there is nothing in the record to show that trial counsel objected specifically on lack of foundation for the recording.

recording, or photograph. As such, Marlo's trial counsel was not deficient for failing to make a meritless objection. *Sims*, supra, 321 Ga. at 635 (4) (a).

(b) Second, as to Marlo's claim that his trial counsel rendered ineffective assistance by failing to object to T. S.'s testimony that she "got raped" and "had been raped," this claim is also meritless. OCGA § 24-7-704 (a) provides that, with the exception of *expert* witnesses, "testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact." Accordingly, under this rule, a *lay* witness' remarks are not barred even if it touches on the ultimate issue in the case. See *Oates v. State*, 355 Ga. App. 301, 305 (3) (844 SE2d 239) (2020) (detective's testimony that the victim "was raped" was not objectionable even if it touched on the ultimate issue to be decided by the jury because the detective was a lay witness); see also *Cantrell v. State*, 360 Ga. App. 862, 865 (2) (862 SE2d 329) (2021) ("Georgia law forbids expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury[.]") (citation omitted).

In light of the aforementioned principles, T. S.'s testimony that she "was raped" and "had been raped" did not run afoul of OCGA § 24-7-704 (a) because as

a lay witness, her testimony was not objectionable even though it went to the ultimate issue to be decided by the jury. And since T. S.'s testimony was not objectionable under OCGA § 24-7-704 (a), trial counsel was not deficient for failing to raise a meritless objection. *Sims*, supra, 321 Ga. at 635 (4) (a).

Consequently, for all of the reasons stated above, Marlo's ineffective assistance of counsel claims fail.

9. Finally, Marlo argues that the cumulative errors warrant a new trial. This claim, however, also fails.

"Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors." (Citation omitted.) *Kirkland v. State*, 318 Ga. 639, 658 (7) (898 SE2d 536) (2024). "To establish cumulative error, [Marlo] must show that (1) *at least two errors* were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Marlo] a fundamentally fair trial." (Emphasis supplied.) *Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023).

Here, however, Marlo has failed to identify any errors that were committed during the course of his trial, and thus his cumulative error claim fails. See *Richardson v. State*, 372 Ga. App. 144, 147-148 (3) (903 SE2d 780) (2024) (defendant's cumulative error claim failed because he could not show that multiple errors were committed during his trial).

In sum, in both cases A25A1402 and A25A1403, we affirm the convictions and sentences and the denials of the motions for new trial.

*Judgment affirmed in both cases. Doyle, P. J., and Rickman, P. J., concur.*